UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVALANCHE FUNDING, LLC, a Colorado limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SYED M. ARIF, et al.,<br><br>Defendant. | No. 2:16-cv-02555-TLN-KJN<br><br>**ORDER** |

This matter is before the Court on Plaintiff Avalanche Funding, LLC's ("Plaintiff") Motion for Appointment of Receiver. (ECF No. 120.) None of the Defendants[1] have opposed the

---

[1] The named Defendants are: Syed M. Arif ("Arif"); Syeda Rehana Begum ("Begum"); Tim Swickard ("Swickard"); Mapes Ranch, Inc.; Five Dot Cattle Company; Norman F. Rice (deceased); the testate and intestate successors of Norman F. Rice, and all persons represented by the personal representative of the estate of Norman F. Rice; Gloria Rice (deceased), in her individual capacity and as trustee of the Rice 1997 Family Trust; the testate and intestate successors of Gloria Rice, and all persons represented by the personal representative of the estate of Gloria Rice; the Rice 1997 Family Trust; Norman Rice Enterprises, Inc.; Matthew G. Huntley; Michon Huntley; Ramona Stonebarger ("Stonebarger") (deceased); the testate and intestate successors of Stonebarger, and all persons represented by the personal representative of the estate of Stonebarger; Art Koffinke ("Koffinke") (deceased); the testate and intestate successors of Koffinke, and all persons represented by the personal representative of the estate of Koffinke; Larry Campbell ("Campbell") (deceased); the testate and intestate successors of Campbell, and all persons represented by the personal representative of the estate of Campbell; Hanson Cattle Company (purported corporation of likely Nevada domicile); Hansen Cattle Company (a Nevada

1

Motion. For the reasons set forth below, Plaintiff's unopposed Motion for Appointment of Receiver is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Allegations

Plaintiff, a lender, brought this action to effect a judicial foreclosure on a deed of trust that has been in default for several years. The instant Motion seeks to appoint a receiver for the subject real property ("Property"), a plot of approximately 3,200 acres of ranch land located in Lassen County.[2] (*See* ECF No. 122 at 5–12; *see also* ECF No. 49 at 7–14; ECF No. 121 at 4–11; ECF No. 122-2 at 35–37.)

On July 23, 2008, Arif and Begum (husband and wife) executed and delivered to Plaintiff a Promissory Note secured by the Deed of Trust, Security Agreement, Fixture Filing, Financing Statement and Assignment of Leases and Rents for the Property. (*See* ECF No. 49; ECF No. 121 at 4; ECF No. 122 at 4; ECF No. 122-1; ECF No. 122-2.) Plaintiff is the beneficiary of the Deed of Trust. (ECF No. 122 at 5; *see also* ECF No. 122-2 at 2.) Arif and Begum do not live on the Property. (*See* ECF No. 121 at 2–3, 11; ECF No. 122 at 12.) Thereafter, Arif and Begum defaulted on the Note. (ECF No. 121 at 12; ECF No. 122 at 4, 13.) Since then, Plaintiff has been required to pay delinquent real estate taxes on the Property because Arif and Begum could not, Five Dot Cattle has been grazing on the Property without paying any rents, portions of the Property are overgrazed (evidenced by the condition of the grass and excessive amount of animal waste in the area), the fences (including the parameter fences) are in a state of disrepair and the

---

corporation); North American Technical Trading Co., Inc.; a trustee of an unnamed trust to be established referenced in a Notice recorded on February 11, 1997, in volume 660 at page 559; Chicago Title Company, in its capacity as Trustee under a Deed of Trust recording no. 2008-04633 of Official Records, Lassen County; all persons unknown claiming only legal or equitable right, title interest, or cloud on Plaintiff's interest in the Property; and Does 1–50 (collectively, "Defendants").

[2] Plaintiff indicates the Deed of Trust must be reformed to correct a Scrivener's Error that omitted a parcel and provides the updated description of the Property. (*See* ECF No. 122 at 5–12; *see also* ECF No. 49 at 15–16.) Plaintiff's request to reform the legal description of the Property in the Deed of Trust is included as a claim in Plaintiff's motion for summary judgment and will be addressed in a separate order.

gates do not work, squatters and "recreaters" leave substantial trash on the Property and utilize a fire pit on the Property that puts it at risk of being damaged by uncontrolled fires, and recent fires have burned some of the Property and fences. (ECF No. 121 at 12; ECF No. 122 at 13–14.) Plaintiff therefore seeks appointment of a receiver in order to clean, repair, protect, and preserve the Property, repair and install appropriate fences, minimize the risk and danger of trespassers and escaping livestock, and collect rents. (ECF No. 121 at 14; ECF No. 122 at 14.)

### B. Procedural History

Plaintiff initiated this action on October 26, 2016. (ECF No. 1.) The matter proceeds on the operative First Amended Complaint ("FAC"). (ECF No. 6.)

Between January and March 2017, Notices of Disclaimer were filed with respect to the following Defendants, by which these Defendants have disclaimed any interest in the Property: Matthew Huntley; Michon Huntley; Norman F. Rice, his testate and intestate successors, and all persons represented by the personal representative of his estate; Gloria Rice, her testate and intestate successors, and all persons represented by the personal representative of her estate; the Rice 1997 Family Trust; Chicago Title Company; and North American Technical Trading Co., Inc. (ECF Nos. 17, 18, 27, 30, 48.)

On May 11, 2017, default was entered against the following Defendants: Norman Rice Enterprises, Inc.; the testate and intestate successors, and all persons represented by the personal representatives of the estates of decedents Koffinke, Campbell, and Stonebarger, respectively; and Hansen Cattle Company. (ECF Nos. 66, 67, 68, 69, 70, 73.) The Court declined to enter default against Campbell, Koffinke and Stonebarger because they are deceased, or against "A Trustee [o]f [a]n [u]nnamed Trust [t]o [b]e [e]stablished [r]eferenced [i]n [a] Notice [r]ecorded [on] February 11, 1997 [i]n Volume 660 [a]t Page 559" because it is an unnamed party.[3] (ECF Nos. 71, 72.)

Meanwhile, on March 13, 2017, Plaintiff and Arif and Begum entered into a settlement

---

[3] Nevertheless, as Plaintiff correctly notes, these parties were properly served pursuant to publication following the Court's approval of Plaintiff's Motion for Service by Publication (*see* ECF Nos. 39, 45), and they have also submitted no opposition to the instant Motion.

agreement. (ECF No. 49; *see* ECF No. 125 at 24.) Pursuant to the settlement agreement, the parties filed a "Notice of Consent to Entry of Judgment in Favor of Avalanche Funding, LLC; Consent to Entry of a Foreclosure Decree; Consent to the Appointment of a Receiver; and Assignment of Redemption Rights and Other Rights," which is executed by Arif and Begum. (ECF No. 49.) Thus, Arif and Begum have abandoned the Property to Plaintiff and consented to the appointment of a receiver for the Property. (*See id.*; *see also* ECF No. 121 at 3.)

On March 31, 2017, Plaintiff filed its first motion for the appointment of a receiver. (ECF No. 50.) Five Dot Cattle Company, Mapes Ranch, Inc. and Swickard (the "Swickard Parties") filed the only opposition to that receiver motion. (ECF No. 53.) On March 26, 2018, the Court denied the motion without prejudice. (ECF No. 89.) Plaintiff asserts the Swickard Parties have grazed cattle on the Property without paying rent to either the landowner or Plaintiff since the Court's Order. (*See* ECF No. 121 at 3; ECF No. 122 at 4.)

Thereafter, Plaintiff and the Swickard Parties reached a settlement agreement by which the Swickard Parties assigned their interest in the Property to Plaintiff and agreed not to oppose the appointment of a receiver for the Property. (ECF Nos. 118, 118-1; *see also* ECF No. 121 at 3; ECF No. 122 at 4.)

On October 29, 2020, Plaintiff filed the instant Motion for Appointment of Receivership. (ECF No. 120.) This Motion is unopposed, as all non-defaulting Defendants have either disclaimed all rights to the Property, consented to a judgment and the appointment of a receiver, or have settled with Plaintiff and assigned to Plaintiff their claims to the Property.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 66 permits the Court to appoint a receiver. *See* Fed. R. Civ. P. 66. Under federal law, appointing a receiver is "an extraordinary equitable remedy that is only justified in extreme situations." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). There is "no precise formula for determining when a receiver may be appointed." *Canada Life Assurance Co. v. LaPeter (Canada Life)*, 563 F.3d 837, 844 (9th Cir. 2009) (citing *id.*). However, the Ninth Circuit has identified a non-exhaustive list of several factors federal courts may consider in making this determination, including:

4

> (1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and[] (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id.* (citing 13 Moore's Federal Practice, Civil § 66.04[2][b] (2021); *N.Y. Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991)) (internal citations and quotations omitted). "Most important among the factors are the adequacy of the security and the financial position of the mortgagor." *N.Y. Life Ins. Co.*, 755 F. Supp. at 292. Indeed, the Ninth Circuit has held that a receiver may be appointed to collect rents pending foreclosure when the district court is satisfied that "the property [is] of insufficient value to insure payment, and [] the defendant [is] of doubtful financial standing." *See Canada Life*, 563 F.3d at 844 (citing *View Crest Garden Apartments v. United States (View Crest)*, 281 F.2d 844, 847 (9th Cir. 1960)). Whether the parties agreed to the appointment of a receiver is also "entitled to great weight as the court exercises its discretion." *N.Y. Life Ins. Co.*, 755 F. Supp. at 292.

### III. ANALYSIS

Plaintiff moves to appoint Thomas Morrow ("Morrow") as the receiver for the Property. (ECF No. 122 at 3.) In support of its Motion, Plaintiff submits the affidavit of Fred J. Orr (representative of Avalanche Funding, LLC), the Promissory Note, Deed of Trust, Security Agreement, Fixture Filing, Financing Statement, and Assignment of Leases and Rents relating to the Property, and Morrow's resume and executed Oath of Receiver. (*See* ECF Nos. 121, 122-1, 122-2, 122-3, 122-4.) The Court finds Plaintiff has established the *Canada Life* factors favor granting appointment.

        A.      <u>Whether the Party Seeking the Appointment has a Valid Claim</u>

Plaintiff has submitted evidence that it has the first priority Deed of Trust on the Property with a "rent, issue and profits" clause granting Plaintiff a first priority lien on the Property and the

rents of the Property. (ECF No. 121 at 11; ECF No. 122 at 20; *see also* ECF No. 122-2.) Furthermore, no Defendant disputes Plaintiff's claim. Accordingly, this factor weighs in favor of Plaintiff.

### B. Whether There is Fraudulent Conduct or the Probability of Fraudulent Conduct by the Defendant

Plaintiff does not contend Arif and Begum have engaged in fraudulent conduct, as they have abandoned the Property and its rents to Plaintiff. (*See* ECF No. 121 at 13; ECF No. 122 at 20.) However, absent a receiver, there is a valid concern that fraudulent rent skimming and unlawful trespass will occur. (*See id.*) Therefore, this factor weighs in favor of Plaintiff.

### C. Whether the Property is in Imminent Danger of Being Lost, Concealed, Injured, Diminished in Value, or Squandered

Plaintiff submits evidence that the rental value of the Property for grazing purposes is $50,000 per year. (ECF No. 121 at 13–14; ECF No. 122 at 20.) However, absent a receiver to collect rent, these profits have gone uncollected. (ECF No. 121 at 14; ECF No. 122 at 20.) Further, Plaintiff submits evidence that: Plaintiff has been required to pay delinquent real estate taxes on the Property because Arif and Begum could not; Five Dot Cattle has been grazing on the Property without paying any rents; portions of the Property are overgrazed (evidenced by the condition of the grass and excessive amount of animal waste in the area); the fences — including the parameter fences — are in a state of disrepair and the gates do not work; squatters and "recreaters" leave substantial trash on the Property and utilize a fire pit on the Property that puts the Property at risk of being damaged by uncontrolled fires; and recent fires have, in fact, burned some of the Property and fences. (ECF No. 121 at 3, 12–14; ECF No. 122 at 13–14.) Plaintiff contends a receiver is needed to repair the damaged fences in order to prevent the risk and danger of trespassers and escaping livestock. (ECF No. 121 at 13; ECF No. 122 at 20.) The Court finds this argument persuasive. Accordingly, this factor weighs in Plaintiff's favor.

### D. Whether Legal Remedies are Inadequate

Plaintiff submits evidence showing that the Property is currently worth $2,000,000 less than the debt secured. (ECF No. 122 at 21.) Further, the rents from the Property — which are

pledged to Plaintiff — have not been collected or paid during the last three years the Property has been in foreclosure proceedings because there has been no receiver to lease the Property and collect the rents. (ECF No. 121 at 13–14.) Plaintiff argues these circumstances demonstrate there is no adequate remedy of law for Plaintiff for the uncollected rents. The Court agrees. Accordingly, this factor also weighs in Plaintiff's favor.

### E. Whether the Harm to Plaintiff by Denial of the Appointment Would Outweigh Injury to the Party Opposing Appointment

Plaintiff has demonstrated it has no remedy to recover its losses for uncollected rents where Arif and Begum cannot pay the deficiency on the Note and Plaintiff has agreed to waive the deficiency upon completion of the foreclosure. (ECF No. 122 at 21; *see also* ECF No. 49; ECF No. 121 at 3, 12–14.) Conversely, no Defendant opposes appointment of a receiver and no harm would come to any Defendant if a receiver is appointed, as all non-defaulting Defendants have either disclaimed all interests in the Property or assigned them to Plaintiff. Therefore, the Court finds the resulting harm to Plaintiff from failing to appoint a receiver outweighs the harm to any Defendant that would result from appointing a receiver. Accordingly, this factor also weighs in favor of Plaintiff.

### F. Plaintiff's Probable Success in the Action and the Possibility of Irreparable Injury to Plaintiff's Interest in the Property

Plaintiff has demonstrated it has a high probability of success in this action. Specifically, all the non-defaulting Defendants have settled with Plaintiff and/or assigned their interests in the Property to Plaintiff and consented to the appointment of a receiver. (*See* ECF Nos. 17, 18, 27, 30, 48–49, 66, 67, 68, 69, 70, 73, 118-1, 119.) Therefore, this factor favors Plaintiff.

### G. Whether Plaintiff's Interest Sought to be Protected Will in Fact be Well-Served by Receivership

Plaintiff submits evidence that appointment of a receiver will serve Plaintiff's interest in the Property in several ways, including: (1) a receiver will enter into a lease arrangement and collect rents; (2) the collected rents will be applied to pay the outstanding deficiency on the Note; (3) appointment of a receiver to facilitate foreclosure will conserve resources during the

foreclosure proceedings; (4) the fences on the Property will be repaired, thus preventing further waste; and (5) appointment of a receiver will put persons in lawful possession of the Property, will allow the defaulting landowners to put their debt behind them, and bring finality to all parties. (ECF No. 121 at 14–15; ECF No. 122 at 22.) Plaintiff's arguments are persuasive. Therefore, this factor weighs in favor of Plaintiff.

### H. Doubtful Financial Standing and Insufficient Value of Property

Finally, Plaintiff addresses the additional consideration identified by the Ninth Circuit — the financial standing of the borrower and insufficient value of the Property. (ECF No. 122 at 22); *see Canada Life*, 563 F.3d at 844; *View Crest*, 281 F.2d at 847. Plaintiff submits evidence that the Note is not fully secured by the Property because the Property is currently valued at less than $2,500,000, whereas the debt against the Property owed to Plaintiff exceeds $5,000,000. (ECF No. 121 at 13.) Thus, the Property value is insufficient and Arif and Begum are not in good financial standing. This consideration, too, weighs in favor of appointing a receiver.

### I. Tom Morrow as Receiver

Plaintiff proposes appointing Morrow to be the receiver for the Property. (ECF No. 122 at 17.) The supporting documents demonstrate Morrow is a cattleman and has served as receiver in over 40 receiverships, including agricultural receiverships similar to that required for the Property. (*See* ECF No. 121 at 15; ECF No. 122 at 17; ECF Nos. 122-3, 122-4.) Furthermore, none of the Defendants oppose the appointment. Based on these credentials, the Court is persuaded Morrow is a qualified and appropriate appointee for a receivership over the Property.

In sum, the Court finds the seven *Canada Life* factors, plus the additional consideration highlighted by Plaintiff, support granting the appointment. *See Canada Life*, 563 F.3d at 844. The fact that no Defendant opposes Plaintiff's Motion (as a result of settling with Plaintiff and/or disclaiming all interests in the Property or assigning them to Plaintiff) is also a compelling consideration that weighs in Plaintiff's favor. Finally, the Court is satisfied that Morrow is qualified to be appointed as the receiver for the Property. (*See* ECF Nos. 122-3, 122-4.)

///

///

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Appointment of Receivership (ECF No. 120) is hereby GRANTED as follows:

1. Tom Morrow is hereby appointed to serve as Receiver for all of the Property described herein ("Receiver") and is charged with the following duties: to protect and preserve the Property; to collect all keys which affect or concern the Property; to change all locks concerning the Property; to pay all bills and costs necessary to preserve and insure the Property arising after the date of his appointment; to enter into such further contracts and arrangements as are reasonably necessary to maximize the rents, issues, and profits of the Property; to exclude all of the Defendants and their employees and agents from the Property; to have the sole and exclusive authority to deal with tenants, employees, management companies, vendors, buyers, and commissioned salesmen concerning the Property; to terminate or renegotiate all leases and contracts and to commence or pursue eviction actions on the Property, and to collect receivables and other accounts due on account of the Property, and such payments shall be made to the Lassen County Treasurer if real estate taxes are owed, and if no real estate taxes are owed, such payments shall be made directly to Plaintiff for application towards the unpaid balance of the Note; to deal with all utility service providers for the Property; to have sole and exclusive authority to terminate existing leases and contracts, and to enter into new leases and contracts for the Property on such terms as the Receiver deems fair; to pay all taxes due on account of the Property only to the extent they constitute liens senior to Plaintiff's liens; to maintain insurance on the Property in an amount reasonably necessary and appropriate; to borrow money and to offer the Property as security therefor as the Receiver deems appropriate; to take possession of all books and records concerning the Property; to hire employees, independent contractors, and management companies to deal with the Property; to irrigate, fertilize, and otherwise cultivate, harvest, and sell growing or harvested crops growing or to be grown on the Property; to collect all U.S. Department of Agriculture ("USDA") Farm Service Agency ("FSA") payments concerning the Property and to execute such documents as the USDA FSA may require with respect to the Property; to establish bank accounts; to pay the Receiver's bills which he incurs (but not Syed M.

Arif's or Syeda Rehana Begum's bills); to deal with and obtain information from the USDA and the Bureau of Land Management ("BLM") and other third parties concerning the Property; and to have all the authority usually held by receivers and reasonably necessary to accomplish the purposes stated herein;

2. The Receiver is empowered to enter into a lease for the Property with a qualified local rancher;

3. The Receiver is empowered to sell the Property at a public foreclosure sale pursuant to 28 U.S.C. § 2001(d) upon an entry of a Foreclosure Decree;

4. The Receiver is authorized to establish BLM base property on the Property and to execute as needed BLM Forms 4130-1a, 4130-1b, 4130-1, 4120-8, and any and all other BLM documentation related to the Property;

5. Pursuant to Local Rule 232(g), the Receiver shall not employ an attorney, accountant, or investigator without first obtaining an order of the Court authorizing such employment, which may set forth a tentative basis for computation of compensation. The actual compensation of such persons shall subsequently be fixed by the Court, after hearing, upon the applicant's affidavit setting forth in reasonable detail the nature of the services and the existence of any agreements concerning the amount of compensation to be paid;

6. Pursuant to Local Rule 232(e)(2), at least once a year, the Receiver shall file and serve a report that shall be heard with notice to all parties in accordance with Local Rule 230. The report shall contain: (i) a summary of the Receiver's operations; (ii) an inventory of all the assets and their value; (iii) a schedule of all the Receiver's receipts and disbursements; (iv) the Receiver's recommendations for a continuation or discontinuation of the Receivership and the reasons therefor; and (v) such other matters as the Court may direct. At the hearing, the Court shall approve or disapprove the Receiver's report and determine whether the Receivership shall be continued;

7. Pursuant to Local Rule 232(h), the Receiver shall deposit all funds received in a depository designated by the Court, entitled "Receiver's Account" together with the name and number of the action;

8. The Receiver may abandon any Property he deems to be of inconsequential value without further order of the Court;

9. The grant of authority to the Receiver to act or make payments hereunder shall not be deemed to be an instruction to act or make payments hereunder unless the Receiver deems it is in the best interest of the Receivership to do such act or to make such payments;

10. This is a Special Receivership with the Receiver's duties as stated herein. This is not a general receivership. The Receiver is not responsible for managing Arif and Begum's business affairs, investigating or prosecuting potential claims against Arif and Begum, evaluating whether or not Arif and Begum should file or continue in a bankruptcy, filing any tax returns or reports, including any federal, state, or local tax returns, sales or use tax returns, or workman's compensation reports or for paying, processing, investigating, or defending against any unsecured claims occurring or incurred prior to his appointment or claims or bills incurred by Arif and Begum;

11. The rents, issue, profits, and proceeds of the Property shall be paid to the Lassen County Treasurer if real estate taxes are due, and the surplus shall be paid directly and solely to Plaintiff for application towards the unpaid balance of the Note;

12. The Receiver shall not pay any pre-receivership expenses, contracts, or leases;

13. The Receiver may obtain funds for the purpose of preserving and protecting the Property by requesting and receiving advances directly from Plaintiff on account of the Note, and such advances shall be deemed to be an additional indebtedness on account of the Note;

14. The Receiver shall file inventories and reports with this Court as required by law;

15. Under the circumstances of this case, no undertaking is required to be filed;

16. The Receiver shall be compensated at the rate of $100 per hour ($50 per hour for travel time), plus the Receiver's out-of-pocket expenses, to include independent contractors of the Receiver; and

17. In light of Arif's significant indebtedness to Plaintiff under the Note, Arif and Begum's consent to the appointment of a receiver and to the foreclosure of the Property, and the lack of opposition to Plaintiff's Motion, no Receiver's bond shall be necessary. This Order shall

be effective immediately.

IT IS SO ORDERED.

DATED: April 26, 2021

Troy L. Nunley
United States District Judge