1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   AVALANCHE FUNDING, LLC, a                 No. 2:16-cv-02555-TLN-KJN
     Colorado limited liability company,
12
                    Plaintiff,
13
                                               **ORDER**
14        v.

15   SYED M. ARIF, et al.,

16                  Defendant.

17

18        This matter is before the Court on Plaintiff Avalanche Funding, LLC's ("Plaintiff")

19   Motion for Summary Judgment. (ECF No. 123.) None of the Defendants[1] have opposed the

20   _____

21   [1]      The named Defendants are: Syed M. Arif ("Arif"); Syeda Rehana Begum ("Begum"); Tim
     Swickard ("Swickard"); Mapes Ranch, Inc.; Five Dot Cattle Company; Norman F. Rice
22   (deceased); the testate and intestate successors of Norman F. Rice, and all persons represented by
     the personal representative of the estate of Norman F. Rice; Gloria Rice (deceased), in her
23   individual capacity and as trustee of the Rice 1997 Family Trust; the testate and intestate
     successors of Gloria Rice, and all persons represented by the personal representative of the estate
24   of Gloria Rice; the Rice 1997 Family Trust; Norman Rice Enterprises, Inc.; Matthew G. Huntley;
     Michon Huntley; Ramona Stonebarger ("Stonebarger") (deceased); the testate and intestate
25   successors of Stonebarger, and all persons represented by the personal representative of the estate
     of Stonebarger; Art Koffinke ("Koffinke") (deceased); the testate and intestate successors of
26   Koffinke, and all persons represented by the personal representative of the estate of Koffinke;
     Larry Campbell ("Campbell") (deceased); the testate and intestate successors of Campbell, and all
27   persons represented by the personal representative of the estate of Campbell; Hanson Cattle
     Company (purported corporation of likely Nevada domicile); Hansen Cattle Company (a Nevada
28

                                                    1

Motion. For the reasons set forth below, Plaintiff's unopposed Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a lender, seeks a foreclosure decree to conduct a judicial foreclosure on a deed of trust that has been in default for several years.

### A. Allegations

On July 23, 2008, Arif and Begum (husband and wife) executed and delivered to Plaintiff a Promissory Note, secured by the "Deed of Trust, Security Agreement, Fixture Filing, Financing Statement and Assignment of Leases and Rents," Recording Number 2008-04633, Official Records of Lassen County ("Deed of Trust"), for a plot of approximately 3,200 acres of ranch land in a remote area of Lassen County (the "Property"). (*See* ECF Nos. 124-1, 124-2; ECF No. 125 at 4, 8–15, 40.) Plaintiff is the beneficiary of the Deed of Trust. (ECF No. 124-2 at 1; ECF No. 125 at 40.) To further secure the Note, Arif and Begum also executed and delivered to Plaintiff a Security Agreement, which secures the Note with Arif and Begum's personal property collateral. (ECF No. 124-3; ECF No. 125 at 45.) On August 6, 2010, Plaintiff and Arif and Begum entered into a Loan Modification of the Note, which extended the maturity date of the loan from July 22, 2010 to August 1, 2011 and modified the payment schedule of the loan. (ECF No. 124-1 at 15–24.)

Thereafter, Arif and Begum defaulted on the Note. (ECF No. 49 at 14–15; ECF No. 125 at 39.) They have not made a payment on the Note secured by the Property since October 31, 2015. (*See id.*) No one resides on the Property. (ECF No. 125 at 41.) Arif and Begum live in Chicago and have not been on the Property for more than ten years. (*Id.* at 44.)

As relevant to the instant Motion, the Deed of Trust, Note, and Security Agreement contain the following provisions: indicating Plaintiff has a priority interest in the Property (ECF

corporation); North American Technical Trading Co., Inc.; a trustee of an unnamed trust to be established referenced in a Notice recorded on February 11, 1997 in volume 660 at page 559; Chicago Title Company, in its capacity as Trustee under a Deed of Trust recording number 2008-04633 of Official Records, Lassen County; all persons unknown claiming only legal or equitable right, title interest or cloud on Plaintiff's interest in property; and Does 1–50 (collectively, "Defendants").

No. 124-1 at 5; ECF No. 124-2 at 7) and default on the Note constitutes a default on the related security instruments (ECF No. 124-1 at 3; ECF No. 124-3 at 3–4); providing Plaintiff may recover all costs and expenses incurred in protecting its interest, including attorneys' fees (ECF No. 124-1 at 7, 16–17; ECF No. 124-2 at 17, 19, 32; ECF No. 124-3 at 5); and identifying several remedies available to Plaintiff in the event of a default, such as accelerating all payments due, taking possession of the Property and related collateral, and foreclosing against the Property and other security interests (ECF No. 124-1 at 2–3; ECF No. 124-2 at 24–27; ECF No. 124-3 at 4–6).

Based on Arif and Begum's default on the Note and pursuant to the terms of the security instruments and relevant agreements, Plaintiff seeks to judicially foreclose on the Property.

B.   Procedural History

Plaintiff initiated this action on October 26, 2016. (ECF No. 1.) The operative First Amended Complaint ("FAC") asserts the following: (1) Promissory Note Claim against Arif and Begum; (2) Reformation of Deed of Trust and for Quiet Title against all parties with respect to an omitted parcel; (4) Judicial Foreclosure of Reformed Deed of Trust against all Defendants; (5) Replevin and Foreclosure of a Security Interest against all Defendants; and (6) Application for the Appointment of Receiver against all Defendants.[2]  (ECF No. 6.)

Between January and March 2017, Notices of Disclaimer were filed with respect to the following Defendants, by which these Defendants have disclaimed any interest in the Property: Matthew Huntley; Michon Huntley; Norman F. Rice, his testate and intestate successors, and all persons represented by the personal representative of his estate; Gloria Rice, her testate and intestate successors, and all persons represented by the personal representative of her estate; the Rice 1997 Family Trust; Chicago Title Company; and North American Technical Trading Co., Inc. (ECF Nos. 17–18, 27, 30, 48.)

Plaintiff additionally requested an order permitting service of the summons by publication, which the Court granted. (ECF Nos. 39, 45.) Pursuant to the publication order, the

---

[2]      The original Complaint included a third cause of action, titled "(3) Quiet Title against the Swickard Defendants for all of the Property." (*See* ECF No. 1 at 40.) However, Claim Three is omitted from the operative FAC entirely. Therefore, the Court only considers Plaintiff's Claims One, Two, Four, Five, and Six in its analysis of the instant Motion for Summary Judgment.

summons was published in the Lassen County Times on March 14, 21, 28, and April 4, 2017. (ECF No. 51 at 3; ECF No. 51-1.) Following completion of service by publication, Plaintiff submitted its Return of Service with respect to the prior unserved Defendants on April 11, 2017. (ECF No. 51.)

On May 11, 2017, default was entered against the following Defendants: Norman Rice Enterprises, Inc.; the testate and intestate successors, and all persons represented by the personal representatives of the estates of decedents Koffinke, Campbell, and Stonebarger, respectively; and Hansen Cattle Company. (ECF Nos. 66, 67, 68, 69, 70, 73.) The Court declined to enter default against Campbell, Koffinke, and Stonebarger because they are deceased. (ECF No. 72.) The Court similarly declined to enter default against "A Trustee Of An Unnamed Trust To Be Established Referenced In A Notice Recorded Of February 11, 1997 In Volume 660 At Page 559 [sic]" because it is an unnamed party.[3] (ECF No. 71.)

Meanwhile, on March 13, 2017, Plaintiff entered into a settlement agreement with Arif and Begum. (ECF No. 49; ECF No. 125 at 24–39.) Pursuant to the settlement agreement, the parties filed a "Notice of Consent to Entry of Judgment in Favor of Avalanche Funding, LLC; Consent to Entry of a Foreclosure Decree; Consent to the Appointment of a Receiver; and Assignment of Redemption Rights and Other Rights by Syed M. Arif and Syeda Rehana Begum" ("Arif/Begum Agreement"), which is executed by Arif and Begum. (ECF No. 49; *see also* ECF No. 125 at 24–39.) Under the Arif/Begum Agreement, Arif and Begum admit all material allegations of the FAC and consent to the entry of a final Judgment and Decree of Foreclosure of the Property in the form submitted by Plaintiff. (ECF No. 49 at 14; ECF No. 125 at 34.) The remaining terms of the Arif/Begum Agreement, as previously filed with the Court, are hereby incorporated by reference in their entirety. (ECF No. 49.)

On January 19, 2018, Five Dot Cattle Company, Mapes Ranch, Inc. and Swickard (the "Swickard Parties") filed an answer to the FAC. (ECF No. 85.) Thereafter, Plaintiff and the

---

[3]     Nevertheless, as Plaintiff correctly notes, these parties were properly served pursuant to publication, following the Court's approval of Plaintiff's Motion for Service by Publication (*see* ECF Nos. 39, 45, 51), and they have also submitted no opposition to the instant Motion.

Swickard Parties reached a settlement agreement by which the Swickard Parties assigned their interest in the Property to Plaintiff and Plaintiff substituted into the action for the Swickard Parties. (ECF Nos. 118, 118-1, 119; *see also* ECF No. 125 at 23–24.)

On January 20, 2019, Plaintiff recorded its Notice of Pendency of Actions concerning the Property in the official records of Lassen County, California, and the Notice of Lis Pendens was filed with this Court on February 3, 2017. (ECF No. 125 at 19; *see also* ECF No. 31.)

On October 29, 2020, Plaintiff filed a motion to appoint a receiver for the Property, which the Court granted. (ECF Nos. 120, 131.)

On October 29, 2020, Plaintiff filed the instant Motion for Summary Judgment on All Claims for Relief and for a Final Judgment and Entry of a Decree of Foreclosure. (ECF No. 123.) The Motion is unopposed, as all non-defaulting Defendants have either disclaimed all rights to the Property, consented to a judgment and the appointment of a receiver, or have settled with Plaintiff and assigned to Plaintiff their interests in the Property. (*See* ECF Nos. 17–18, 27, 30, 48, 49, 66, 67, 68, 69, 70, 73, 118, 118-1, 119.)

## II. STANDARD OF LAW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (*Matsushita*), 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Conte v. Jakks Pac., Inc.*, 981 F. Supp. 2d 895, 901–02 (E.D. Cal. 2013) (quoting *Barker v. Norman,* 651 F.2d 1107, 1123 (5th Cir. 1981)); *see also Robi v. Five Platters, Inc.,* 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Comm'r Internal Revenue Serv.,* 878 F.2d 306, 309 (9th Cir. 1989). A court may grant summary adjudication as to specific issues if it will narrow the issues for trial. *First Nat'l Ins. Co. v. F.D.I.C.,* 977 F. Supp. 1051, 1055 (S.D. Cal. 1977).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc. (Nissan Fire)*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03; *see Adickes*, 398 U.S. at 160. If, however, a moving party carries its burden of production, the burden then shifts to the nonmoving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 585–87.

In the endeavor to establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor but need only show the claimed factual dispute "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Similarly, the nonmoving party may not merely rely upon the mere allegations or denials of its pleadings or "show that there is some metaphysical doubt as to the material facts," but must instead tender evidence of specific facts in the form of affidavits and/or admissible discovery material, in support of its contention that the dispute exists. *Matsushita*, 475 U.S. at 586; *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(c), (e)). Finally, the nonmoving party must demonstrate the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e.,

the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 251–52.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the nonmoving party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, mere disagreement as to legal implications of the material facts does not bar summary judgment. *See Beard v. Banks*, 548 U.S. 521, 530 (2006). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire,* 210 F.3d at 1103; *see also Celotex Corp.,* 477 U.S. at 322.

Even when a summary judgment motion is unopposed, a district court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but rather must consider the merits of the motion." *Leramo v. Premier Anesthesia Med. Grp.*, No. CV F 09-2083 LJO JTL, 2011 WL 2680837, at *8 (E.D. Cal. Jul. 8, 2011), *aff'd*, 514 F. App'x 674 (9th Cir. 2013) (quoting *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004)); *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). That is, a district court must still "determine . . . whether the moving party has shown itself to be entitled to judgment as a matter of law." *Leramo*, 2011 WL 2680837, at *8 (quoting *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990)). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("a district court is 'not required to comb the record to find some reason to deny a motion for summary judgment'")

(citation omitted); *see also North American Specialty Insurance Company v. Royal Surplus Lines*

*Insurance Company*, 541 F.3d 552, 558 (5th Cir. 2008) (if no factual showing is made in

opposition to a motion for summary judgment, the district court is not required to search the

record *sua sponte* for a triable issue of fact).

### III. ANALYSIS

#### A. Promissory Note Claim Against Arif and Begum (Claim One)

In Claim One, Plaintiff seeks a judgment against Arif and Begum for the unpaid balance

of the Note, including interest, fees, taxes, and attorneys' fees and costs, as provided for by the

terms of the Deed of Trust and Note. (*See* ECF No. 6 at 7–9; ECF No. 125 at 39–40, 48–49.)

Plaintiff has submitted copies of the security instruments for the Property and the Arif/Begum

Agreement in support of its claim. (*See* ECF Nos. 49, 124-1, 124-2.)

As previously discussed, Arif and Begum executed a Note to Plaintiff in the amount of

$950,000, secured by the Deed of Trust for the Property. (ECF No. 125 at 39; *see also* ECF No.

124-1 at 1; ECF No. 124-3 at 1.) Arif and Begum defaulted on the Note and no payments have

been made since October 31, 2015. (*See* ECF No. 49 at 14–15; ECF No. 125 at 34, 39.) In the

event of default, the Deed of Trust and Note provide that Plaintiff may accelerate all payments

due on all principal, interest, and other amounts. (ECF No. 124-1 at 2–3; ECF No. 124-2 at 24–

27; *see* ECF No. 125 at 39–40.) This includes attorneys' fees, administrative costs, late payment

fees, and other "costs and expenses (together with interest thereon at the Default Rate from the

date incurred)" incurred by Plaintiff "to enforce and defend [its] rights under any of the Loan

Documents." (ECF No. 124-1 at 7, 16–17; ECF No. 124-2 at 17, 19, 32; ECF No. 124-3 at 5.)

In accordance with the provisions of the Deed of Trust and Note, Plaintiff has calculated

the unpaid balance on the Note to be $4,807,615.58 as of October 31, 2015, as follows:

| | |
|---|---|
| Unpaid Principal: | $937,900 |
| Accrued Interest through 10/31/15: | $3,561,512.74 |
| Late Charges: | $136,116.07 |
| Advance by Lender to pay delinquent real estate taxes: | $172,086.77 |
| Total unpaid balance as of 10/31/15: | $4,807,615.58 |

(ECF No. 6 at 8; ECF No. 125 at 39.) This figure is exclusive of interest to be charged from

November 1, 2015 onward and Plaintiff's attorneys' fees and costs. (*See* ECF No. 6 at 8–9; ECF No. 125 at 39.) However, the Note continues to accrue interest on and after November 1, 2015 at the default rate of 33%. (ECF No. 124-1 at 3; ECF No. 125 at 39.)

Plaintiff additionally claims the terms of the Deed of Trust and Note provide that it is entitled to a judgment for the deficiency owed under the Note after the completion of the foreclosure of the Property. (ECF No. 6 at 9; *see also* ECF No. 124-3 at 5.) Nevertheless, pursuant to the Arif/Begum Agreement, in exchange for Plaintiff's consent, assignment of interest, and stipulations, Plaintiff agreed to waive a personal judgment against Arif and Begum for any deficiency owed under the Note after the foreclosure sale of the Property, and it has waived its right to recover attorneys' fees. (ECF No. 49 at 15; ECF No. 125 at 34, 39–40.)

Arif and Begum do not oppose Plaintiff's claim. To the contrary, under the Arif/Begum Agreement, they admit all material facts of the FAC and agree they are indebted to Plaintiff for the unpaid balance of the Note in the amount of $4,807,615.58, plus continuing interest after November 1, 2015. (ECF No. 49 at 14–15; ECF No. 125 at 34.)

Based on the record before it, the Court finds Plaintiff has met its burden of demonstrating it is entitled to a judgment against Arif and Begum for the unpaid balance of the Note plus interest thereon on and after November 1, 2015, at the per annum rate of 33%. *Nissan Fire,* 210 F.3d at 1102. Further, pursuant to the Arif/Begum Agreement, this Judgment is "on a non-recourse basis to support [Plaintiff's] liens on the Property and the Personal Property Collateral" and Plaintiff has waived "a personal judgment against Syed M. Arif and Syeda Rehana Begum for the deficiency due under the Note after the foreclosure sale of the Property." (ECF No. 49 at 15.) Accordingly, Plaintiff's Motion is GRANTED as to Claim One.

> B. Reformation of Deed of Trust Against All Parties with Respect to an
> Omitted Parcel (Claim Two)

Plaintiff seeks to reform the Deed of Trust to include a parcel which Plaintiff contends was omitted from the original Deed of Trust due to a scrivener's error ("Omitted Parcel"). (ECF No. 6 at 9–39; ECF No. 125 at 40–41, 49–50.) The legal description for the Omitted Parcel Plaintiff seeks to add to the legal description for the Deed of Trust for the Property is as follows:

<u>THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF LASSEN STATE OF CALIFORNIA;</u>

The North 396 feet of the South 476 feet of the West 550 feet of the S.E. ¼ of the N.E. ¼ of Section 11, T. 23 N., R.17 E. M.D.M.

EXCEPTING THEREFROM, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO CHARLES A. GALEPPI, RECORDED April 07,1941, IN BOOK 39 PAGE 472, OF DEEDS.

(ECF No. 6 at 17; ECF No. 125 at 40.)

Plaintiff claims that at the time Arif and Begum executed and delivered the Deed of Trust to Plaintiff, they owned a small parcel of land that they acquired from the State of California Department of Transportation by a Deed dated September 2, 2005, and recorded on October 17, 2005, Recording No. 2005-09942. (ECF No. 6 at 17; ECF No. 125 at 40.) This parcel is entirely landlocked by the Property and was only excluded from the Deed of Trust due to a scrivener's error. (*Id.*) Plaintiff therefore requests the Deed of Trust be reformed to correct the scrivener's error and to reflect the legal description of the entire Property, inclusive of the Omitted Parcel, as follows:

<u>THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF LASSEN, STATE OF CALIFORNIA:</u>

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF LASSEN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

IN TOWNSHIP 24 NORTH, RANGE 17 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

SECTION 13: THE E 1/2 OF THE NW 1/4; THE NE 1/4 OF THE SW 1/4; AND THE W 1/2 OF THE E 1/2.

EXCEPTING THEREFROM THE PARCEL DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED MAY 03, 1968, IN BOOK 221 PAGE 378, OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM A STRIP OF LAND, 100 FEET IN WIDTH, AS DESCRIBED IN THE JUDGMENT OF CONDEMNATION IN FAVOR OF CHARLES MORAN, ET AL, RECORDED FEBRUARY 08, 1888, IN BOOK F PAGE 326, OF DEEDS.

ALSO EXCEPTING THEREFROM ALL THAT PORTION LYING WESTERLY OF THE EASTERLY LINE OF THE WESTERN PACIFIC RAILROAD AND THAT PORTION LYING EASTERLY OF THE WESTERLY LINE OF U.S. HIGHWAY 395, AS DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED SEPTEMBER 22, 1933, IN BOOK 30 PAGE 246, OF DEEDS.

SECTION 24: LOTS 2, 3 AND 4; THE W 1/2 OF THE E 1/2; THE E 1/2 OF NW 1/4; AND THE NE 1/4 OF THE SW 1/4.

EXCEPTING THEREFROM A STRIP OF LAND, 100 FEET IN WIDTH, AS DESCRIBED IN THE JUDGMENT OF CONDEMNATION IN FAVOR OF CHARLES MORAN, ET AL, RECORDED FEBRUARY 08, 1888, IN BOOK F PAGE 326, OF DEEDS.

ALSO EXCEPTING THEREFROM A STRIP OF LAND 100 FEET IN WIDTH AS DESCRIBED IN THE DEED TO WESTERN PACIFIC RAILWAY COMPANY, RECORDED APRIL 10, 1905, IN BOOK P PAGE 214, OF DEEDS.

ALSO EXCEPTING THEREFROM A STRIP OF LAND 200 FEET IN WIDTH AS DESCRIBED IN THE DEED TO WESTERN PACIFIC RAILWAY COMPANY, RECORDED FEBRUARY 08, 1906, IN BOOK P PAGE 632, OF DEEDS.

ALSO EXCEPTING THEREFROM PARCELS 1 AND 2 AS DESCRIBED IN THE DEED TO ERMIN J. HINTZ RECORDED September 13, 1967, IN BOOK 216 PAGE 472, OF OFFICIAL RECORDS.

SECTION 25: LOTS 1, 2, 3 AND 4; AND THE W 1/2 OF THE SW 1/4.

SECTION 26: THE S 1/2 OF THE SE 1/4.

SECTION 34: THE E 1/2 OF THE SE 1/4; AND THE SW 1/4 OF THE SE 1/4.

EXCEPTING FROM THE NE 1/4 OF THE SE 1/4; AND THE SW 1/4 OF THE SE 1/4, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO FRED E. GALEPPI, RECORDED MAY 11, 1982, IN BOOK 401 PAGE 521, OF OFFICIAL RECORDS.

SECTION 35: THE W 1/2 OF THE SW 1/4.

SECTION 36: THE SW 1/4 OF THE NE 1/4; THE SE 1/4 OF THE NW 1/4; THE E 1/2 OF THE SW 1/4; AND THE SW 1/4 OF THE SW 1/4.

EXCEPTING THEREFROM A STRIP OF LAND 150 FEET IN

WIDTH AS DESCRIBED IN THE DEED TO WESTERN PACIFIC RAILWAY COMPANY, RECORDED MARCH 15, 1905, IN BOOK P PAGE 159, OF DEEDS.

IN TOWNSHIP 23 NORTH, RANGE 17 EAST, MOUNT DIABLO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

SECTION 1: LOTS 1 AND 2; THE S 1/2 OF THE NW 1/4; THE SW 1/4 OF THE NE 1/4; THE W 1/2 OF THE SE 1/4; AND THE S 1/2 OF THE SW 1/4.

EXCEPTING THEREFROM THE PARCEL DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED SEPTEMBER 04, 1926, IN BOOK 18 PAGE 189, OF DEEDS.

ALSO EXCEPTING THEREFROM THE PARCEL DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 10, 1992, IN BOOK 560 PAGE 500, OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM THE S 1/2 OF THE SW 1/4, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO CHARLES A. GALEPPI, RECORDED APRIL 07, 1941, IN BOOK 39 PAGE 472, OF DEEDS.

SECTION 2: LOTS 1, 2, 3 AND 4; THE SE 1/4 OF THE NW 1/4; THE S 1/2 OF THE NE 1/4; THE N 1/2 OF THE SE 1/4; THE SW 1/4 OF THE SE 1/4; THE E 1/2 OF THE SW 1/4; AND THE SW 1/4 OF THE SW 1/4.

EXCEPTING FROM THE SW 1/4 OF THE SW 1/4, ALL THAT PORTION THEREOF LYING SOUTHERLY AND EASTERLY OF THE NORTHWESTERLY LINE OF THE STRIP OF LAND 100 FEET IN WIDTH CONVEYED TO WESTERN PACIFIC RAILWAY COMPANY BY DEED, RECORDED JUNE 06, 1905, IN BOOK P PAGE 341, OF DEEDS.

EXCEPTING FROM THE SW 1/4 OF THE SE 1/4, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO CHARLES A. GALEPPI, RECORDED April 07,1941, IN BOOK 39 PAGE 472, OF DEEDS.

ALSO EXCEPTING THEREFROM THE PARCEL DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 10, 1992, IN BOOK 560 PAGE 500, OF OFFICIAL RECORDS.

SECTION 3: LOT 1 AND 2; THE S 1/2 OF THE NE 1/4; AND THE SE 1/4.

EXCEPTING FROM LOT 2: THE SE 1/4 OF THE NE 1/4; AND THE S 1/2 OF THE SE 1/4, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO FRED E. GALEPPI, RECORDED MAY 11, 1982, IN BOOK 401 PAGE 521, OF OFFICIAL RECORDS.

SECTION 10: THE N 1/2 OF THE NE 1/4.

EXCEPTING THEREFROM, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO FRED E. GALEPPI, RECORDED MAY 11, 1982, IN BOOK 401 PAGE 52l, OF OFFICIAL RECORDS.

SECTION 11: THE E 1/2 OF THE E 1/2; AND THE NW 1/4 OF THE NE 1/4.

THE NORTH 396 FEET OF THE SOUTH 476 FEET OF THE WEST 550 FEET OF THE S.E. ¼ OF THE N.E. ¼ OF SECTION 11, T. 23 N., R.17 E. M.D.M.

EXCEPTING THEREFROM, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO CHARLES A. GALEPPI, RECORDED April 07,1941, IN BOOK 39 PAGE 472, OF DEEDS.

ALSO EXCEPTING THEREFROM THE PARCEL DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 10, 1992, IN BOOK 560 PAGE 500, OF OFFICIAL RECORDS.

SECTION 12: THE NW 1/4 OF THE NW 1/4.

EXCEPTING THEREFROM, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE R1GHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO CHARLES A. GALEPPI, RECORDED APRIL 07, 1941, IN BOOK 39 PAGE 472, OF DEEDS.

SECTION 14: THE N 1/2 OF THE NE 1/4; THE E 1/2 OF THE NW 1/4; THE NE 1/4 OF THE SW 1/4; AND THE W 1/2 OF THE SE 1/4.

EXCEPTING THEREFROM THE PARCEL DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 10, 1992, IN BOOK 560 PAGE 500, OF OFFICIAL RECORDS.

ALSO EXCEPTING FROM THE N 1/2 OF THE NE 1/4 AND THE

NE 1/4 OF THE NW 1/4, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO CHARLES A. GALEPPI, RECORDED APRIL 07, 1941, IN BOOK 39 PAGE 472, OF DEEDS.

SECTION 15: THE SW 1/4 OF THE NE 1/4; AND THE W 1/2 OF THE SE 1/4.

EXCEPTING THEREFROM, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO THE HEIRS OF ARTHUR PAUL PENSA, RECORDED MAY 11, 1982, IN BOOK 401 PAGE 527, OF OFFICIAL RECORDS.

SECTION 22: THE NW 1/4 OF THE NE 1/4.

EXCEPTING THEREFROM, ALL THE COAL AND OTHER MINERALS IN SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME AS CONTAINED IN THE PATENT FROM THE UNITED STATES OF AMERICA TO THE HEIRS OF ARTHUR PAUL PENSA, RECORDED MAY 11, 1982, IN BOOK 401 PAGE 527, OF OFFICIAL RECORDS.

APN: 143-070-07, 143-070-12, 143-070-13, 143-070-15, 143-100-03, 143-100-07, 143-100-20, 143-100-22, 143-100-24, 143-100-26, 145-020-05, 145-020-06, 145-030-03, 145-030-04, 145-030-05, 145-030-11, 145-030-16, 145-040-12, 145-050-12, 145-050-15, 145-050-04

Parcel No.: 143-070-07

Together with all of Trustor's right, title and interest, whether now owned or hereafter acquired, in and to the following:

(a) All buildings, structures, and improvements now or hereafter located on such tract or tracts, as well as all rights-of-way, easements, and other appurtenances thereto ("Improvements");

(b) Any land lying between the boundaries of such tract or tracts and the center line of any adjacent street, road, avenue, or alley, whether opened or proposed, if any;

(c) All of the rents, income, receipts, revenues, issues and profits of and from such tract or tracts and improvements;

(d) All (i) water and water rights (whether decreed or undecreed, tributary, nontributary or not nontributary, surface or underground, or appropriated or unappropriated), including, without limitation, those certain water rights

14

granted in Decree No. 12999, entered August 9, 1976, in Book 26 of Judgments, Page 20, by the Superior Court for Lassen County concerning the Long Valley Creek Stream System within California in Counties of Lassen, Sierra and Plumas; (ii) ditches and ditch rights; (iii) spring and spring rights; (iv) reservoir and reservoir rights; and (v) shares of stock in water, ditch and canal companies and all other evidence of such rights, which are now owned or hereafter acquired by Trustor and which are appurtenant to or which have been used in connection with such tract or tracts or improvements;

(e) All minerals, crops, timber, trees, shrubs, flowers, and landscaping features now or hereafter located on, under or above such tract or tracts;

(f) All machinery, apparatus, equipment, fittings, fixtures (whether actually or constructively attached, and including all trade, domestic, and ornamental fixtures) now or hereafter located in, upon, or under such tract or tracts or improvements and used or usable in connection with any present or future operation thereof, including but not limited to all heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, cooking, and communications apparatus; boilers, water heaters, ranges, furnaces, and burners; appliances; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; and all additions thereto and replacements therefor;

(g) All rights to the payment of money, accounts, accounts receivable, reserves, deferred payments, refunds, cost savings, payments and deposits, whether now or later to be received from third parties (including all earnest money sales deposits) or deposited by Trustor with third parties (including all utility deposits), escrow funds, escrow accounts, contract rights, management agreements, construction agreements or contracts, franchise agreements, development and use rights, governmental permits and licenses, including, without limitation, that certain Use Permit (File No. 2002-113) issued by the Lassen County Planning Commission on February 26, 2003 for the operation of a Pozzolan mine, applications, architectural and engineering plans, specifications and drawings, as-built drawings, chattel paper, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Beneficiary), which arise from or relate to construction on the Land, occupancy, management, operation, or to any business now or hereafter to be conducted on it, or to the Land and Improvements generally;

(h) All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Property or the other property described above into cash or liquidated claims, including proceeds from the sale or other disposition of the Property or other property described herein, including, but not limited to, all present and future Leases, Sales Contracts (defined below), rights to payment of money as well as proceeds of all present and future fire, hazard or casualty insurance policies and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any damage or injury to the Property or the other property described above or any part of them, or breach of warranty in connection with the construction of the Improvements, including causes of action arising in tort, contract, fraud or concealment of a material fact;

(i) All development rights associated with such tract or tracts, whether previously or subsequently transferred to such tract or tracts from other real property or now or hereafter susceptible of transfer from such tract or tracts to other real property;

(j) All awards and payments, including interest thereon, resulting from the exercise of any right of eminent domain or any other public or private taking of, injury to, or decrease in the value of, any of such property;

(k) All books and records pertaining to any and all of the property described above, including computer-readable memory and any computer hardware or software necessary to access and process such memory;

(l) All trade names and trademarks;

(m) all of Trustor's interest in and to the Loan funds, whether disbursed or not, and any of Trustor's funds now or later to be held by or on behalf of Beneficiary;

(n) Any and all contracts and agreements for the sale of all or any portion of the Property and all rights to any and all earnest money deposits, sales proceeds and all other payments now or hereafter due thereunder ("Sales Contracts"). Trustor represents and warrants that there are no current Sales Contracts affecting the Property;

(o) All of Trustor's right, title and interest in and to any association or joint ownership association, now or hereafter formed pursuant to a declaration (the "Association") and interest in any common areas or common elements and any limited common areas or limited common elements of the Property owned by the Association; and

(p) All other and greater rights and interests of every nature in such tract or tracts and in the possession or use thereof and income therefrom, whether now owned or subsequently acquired by Trustor.

(ECF No. 6 at 17–24; *see also* ECF No. 125 at 25–35, 40–41.) The Court deems Plaintiff's requested relief is warranted as follows.

"To reform an agreement, the aggrieved party must show: 1) the true intent of the parties by clear and convincing evidence and that the error was a 'mutual mistake'[;] and 2) that reformation will not prejudice the rights acquired by bona fide purchasers." *In re Pavich*, 191 B.R. 838, 845 (Bankr. E.D. Cal. 1996) (citing Cal. Civ. Code § 3399; *Shupe v. Nelson*, 254 Cal. App. 2d 693, 699–700 (1967)). "If the above two-part test is satisfied, the court may reform a deed of trust *nunc pro tunc*." *Id.* (citing *Western Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 793 (N.D. Cal. 1992)).

As to the mutuality of mistake, Plaintiff has submitted evidence that Arif and Begum admit its allegations with respect to the scrivener's error concerning the Property and Omitted Parcel. (*See* ECF No. 49 at 14; ECF No. 125 at 34–35.) Specifically, in the Arif/Begum Agreement, Arif and Begum stipulate that the Omitted Parcel, which is entirely landlocked by the Property, was inadvertently left out of the legal description in the Deed of Trust due to a scrivener's error. (ECF No. 49 at 15–16.) The Court finds Plaintiff has satisfied its burden of establishing by clear and convincing evidence that the error was a "mutual mistake" and that the parties intended for the Omitted Parcel to be included in the Deed of Trust description for the Property. *Nissan Fire*, 210 F.3d at 1102; *Pavich*, 191 B.R. at 845.

Furthermore, the Court is satisfied that the reformation will not "prejudice the rights acquired by bona fide purchasers" because Plaintiff currently holds all interests in the Property. *Pavich*, 191 B.R. at 845. Plaintiff has demonstrated that it is the current beneficiary of the Deed of Trust. (ECF No. 124-2 at 1; ECF No. 125 at 40.) As previously noted, Plaintiff's claim is unopposed by any Defendant. Indeed, the majority of Defendants either defaulted or submitted Notices of Disclaimer, disclaiming all interest in the Property. (*See* ECF Nos. 17–18, 27, 30, 48, 66, 67, 68, 69, 70, 73.) The Swickard Parties settled with Plaintiff, assigned all interests in the

Property to Plaintiff, and Plaintiff substituted into the action for them. (ECF Nos. 118, 118-1, 119.) The remaining Defendants (Arif and Begum) have also settled with Plaintiff and assigned their interests in the Property to Plaintiff. (ECF No. 49 at 18; ECF No. 125 at 24, 37–38.) Further, per the Arif/Begum Agreement, Arif and Begum agree that the Deed of Trust should be reformed to include the Omitted Parcel in its description of the Property. (ECF No. 49 at 15–16.)

Based on the record before it, the Court finds Plaintiff has met its burden of demonstrating the legal description of the Property in the Deed of Trust must be reformed to include the Omitted Parcel. *Nissan Fire,* 210 F.3d at 1102; *Pavich*, 191 B.R. at 845. Therefore, Plaintiff's Motion is GRANTED as to Claim Two.

The Deed of Trust is hereby reformed as follows: The Omitted Parcel shall be included in the legal description in the Deed of Trust as described above and pledged to Plaintiff under the Deed of Trust. As such, the priority date of Plaintiff's lien on the Omitted Parcel is the July 30, 2008 recording date of the Deed of Trust. Plaintiff shall therefore have a first priority lien on the Omitted Parcel with a priority date of July 30, 2008. The Omitted Parcel shall be foreclosed with the Property as defined herein.

C. Judicial Foreclosure of Reformed Deed of Trust Against All Defendants (Claim Four)

Plaintiff seeks to judicially foreclose on the Deed of Trust pursuant to California Code of Civil Procedure § 726(a).

When a borrower defaults on a loan secured by real property, the lender can seek to recover the debt via judicial or nonjudicial foreclosure. *See* Cal. Civ. Proc. Code § 726(a); *see also Black Sky Capital, LLC v. Cobb*, 7 Cal. 5th 156, 159–60 (2019). The lender initiates a judicial foreclosure by filing a lawsuit. *See* Cal. Civ. Proc. Code § 726(a). If the lender proves its case, the court can order the sale of the property to satisfy the borrower's debt. *See Arabia v. BAC Home Loans Servicing, L.P.*, 208 Cal. App. 4th 462, 470–71 (2012). Specifically, California Code of Civil Procedure § 726(a) provides:

> the court may, by its judgment, direct the sale of the encumbered real property or estate for years therein (or so much of the real property or estate for years as may be necessary), and the application of the

proceeds of the sale to the payment of the costs of court, the expenses of levy and sale, and the amount due plaintiff, including, where the mortgage provides for the payment of attorney's fees, the sum for attorney's fees as the court shall find reasonable, not exceeding the amount named in the mortgage.

Cal. Civ. Proc. Code § 726(a).

In a judicial foreclosure, the foreclosing party must establish: "(1) an obligation, such as execution of a note; (2) the security: execution of the mortgage or deed of trust and its recordation; (3) default by mortgagor; [4] interests of defendants other than mortgagor; and [5] attorneys' fees and other expenses." *ING Bank, FSB v. Ahn*, 758 F. Supp. 2d 936, 943 (N.D. Cal. 2010) (citing 5 Witkin, Cal. Proc. § 675).

In addition, the foreclosing party is required "to give notice to persons who have a recorded interest in the real property which is junior to that of the foreclosing party." *Diamond Benefits Life Ins. Co. v. Troll (Diamond Benefits)*, 66 Cal. App. 4th 1, 7 (1998). "A judicial sale removes liens from the property junior to the one being foreclosed if the junior lienors are made parties to the action." *LPP Mortg. Ltd., L.P. v. Gates*, No. CV 15-10008 DSF (PLAx), 2017 WL 663352, at *2 (C.D. Cal. Feb. 17, 2017), *aff'd sub nom. LPP Mortg. Ltd., LP v. Gates Tr. of David W. Gates Tr. dated Aug. 5, 1996*, 741 F. App'x 428 (9th Cir. 2018) (internal quotations and citations omitted); *cf. Arabia*, 208 Cal. App. 4th at 481 ("A junior lienholder's interest in a property that is subject to a judicial foreclosure on a senior lien is not affected if the junior lienholder is not included as a defendant in the judicial foreclosure action.").

Under certain circumstances, "a judicial foreclosure allows the plaintiff to seek a deficiency judgment against the borrower, if the property is sold for less than the amount of indebtedness." *Arabia*, 208 Cal. App. 4th at 471. The amount of the deficiency judgment will be the difference between the fair market value of the property at the time of the foreclosure sale (as determined by the court) and the amount of indebtedness. *Id.* (citing *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1236 (1995)); *see also Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 43–44 (1963). "However, the debtor has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure." *Arabia*, 208 Cal. App. 4th at 471 (quoting *All. Mortg. Co.*, 10 Cal. 4th at 1236). "If

the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights."

*Black Sky Capital, LLC*, 7 Cal. 5th at 161. "If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment." *Id.*; *see also* Cal. Civ. Proc. Code § 726(e) (contemplating waiver of deficiency judgment); *DeBerard Props. v. Lim*, 20 Cal. 4th 659, 669–70 (1999) (discussing waiver of § 726 protections).

Here, Plaintiff seeks a foreclosure decree that its interest in the Property is senior to the interests of all Defendants in the Property, that Plaintiff is entitled to foreclose its senior interest in the Property, and that no redemption rights under California Code of Civil Procedure § 726(e) exist. (ECF No. 6 at 39–40; ECF No. 125 at 41–45, 50–51.) The Court will evaluate whether Plaintiff has established it is entitled to a judicial foreclosure decree, whether junior interests will be removed upon foreclosure, and whether any statutory redemption rights remain.

*i.*      *Plaintiff is Entitled to Judicial Foreclosure*

Here, Plaintiff has submitted sufficient evidence to establish it is entitled to judicial foreclosure. As previously discussed in greater detail: (1) Arif and Begum executed a Note in the amount of $950,000, secured by the Deed of Trust for the Property (ECF No. 124-1 at 1; ECF No. 124-2; ECF No. 125 at 39); (2) Plaintiff is the beneficiary of the Deed of Trust (ECF No. 124-2 at 1; ECF No. 125 at 40); (3) Arif and Begum defaulted on the Note and have failed to make any payments since October 31, 2015 (ECF No. 49 at 14–15; ECF No. 125 at 39); (4) no other Defendants have interests in the Property that will be affected by the foreclosure (as detailed herein); and (5) Plaintiff has waived its attorneys' fees and costs pursuant to the Arif/Begum Agreement (ECF No. 49 at 15; ECF No. 125 at 34, 39–40). *ING Bank*, 758 F. Supp. 2d at 943. Further, the Deed of Trust provides that Plaintiff may foreclose on the Property in the event of Arif and Begum's default. (ECF No. 124-2 at 24–27; ECF No. 125 at 44.) No Defendants oppose Plaintiff's claim. Moreover, Arif and Begum have stipulated that Plaintiff has a right to foreclose. (ECF No. 49 at 16–18; ECF No. 125 at 44.)

*ii.*      *Any Junior Interests in the Property Shall Be Removed*

It is undisputed that Plaintiff holds the senior interest to the Property as beneficiary to and possessor of the first lien on the Property. (ECF No. 49 at 14, 16; ECF No. 124-1 at 5; ECF No.

124-2 at 1, 7; ECF No. 125 at 40); *see also Friery v. Sutter Buttes Sav. Bank*, 61 Cal. App. 4th 869, 878 (1998) ("California follows the 'first in time, first in right' system of lien priorities.")

With respect to any potential junior lienholders, the Court is satisfied that Plaintiff has given all required notice such that all junior liens will be removed from the Property upon foreclosure. *Diamond Benefits*, 66 Cal. App. 4th at 7. As previously detailed, Plaintiff effected both personal service and service by publication. (*See* ECF Nos. 8, 14, 16, 32, 33, 34; ECF No. 51 at 3; ECF No. 51-1.) Having served (either personally or by publication) all potential junior lienors who have a recorded interest in the Property, Plaintiff has made them all parties to the instant action. *See Diamond Benefits*, 66 Cal. App. 4th at 7. Following service, each and every Defendant either defaulted, filed a Notice of Disclaimer, or settled with Plaintiff and/or assigned all interests in the Property to Plaintiff. (*See* ECF Nos. 17–18, 27, 30, 48, 49, 66, 67, 68, 69, 70, 73, 118, 118-1, 119; *see also* ECF No. 125 at 41.) Plaintiff retained the Swickard Parties' interest in the Property when it substituted into the action for them. (*See* ECF Nos. 118-1, 119.) No Defendant seeks to assert an interest in the Property or oppose Plaintiff's Motion. Moreover, pursuant to the Arif/Begum Agreement, Arif and Begum have stipulated and agreed that Plaintiff's Deed of Trust on the Property

> is a good, valid and binding first priority Deed of Trust and lien on the Property; that [Plaintiff's] interest in the Property by virtue of the Deed of Trust is senior to the interests of all other parties in this case in the Property; that [Plaintiff] is entitled to foreclose its senior interest in the Property; that upon completion of the foreclosure, and in the absence of redemption, the interests of all other parties in this case in the Property shall be forever foreclosed, terminated, and extinguished.

(ECF No. 49 at 16.) Accordingly, all junior liens shall be removed from the Property upon foreclosure. *Diamond Benefits*, 66 Cal. App. 4th at 7; *LPP Mortg. Ltd., L.P.*, 2017 WL 663352, at *2.

### iii.      *Deficiency Judgment/Redemption Rights Are Waived*

Here, no deficiency judgment is sought or entered. Pursuant to the Arif/Begum Agreement, Plaintiff agreed to waive any deficiency judgment owed under the Note after the foreclosure sale of the Property. (ECF No. 49 at 15; ECF No. 125 at 34, 40.) In turn, Arif and

Begum have waived their redemption rights, and to the extent not waived, those redemption rights have been assigned to Plaintiff. (ECF No. 49 at 16, 18.) Since a deficiency judgment and the owner's redemption rights have been waived, the Property shall be sold without any owner's right of redemption pursuant to California Code of Civil Procedure § 726(e). *See Black Sky Capital, LLC*, 7 Cal. 5th at 161. Accordingly, at the conclusion of the foreclosure sale, the high bidder is entitled to a Receiver's Deed without any further right of redemption. *See id.*

In sum, the Court finds Plaintiff has met its burden of establishing it is entitled to judicial foreclosure under California Code of Civil Procedure § 726(a). *Nissan Fire,* 210 F.3d at 1102. Further, the Court finds Plaintiff's interest in the Property is senior to the interests of all Defendants, Plaintiff is entitled to foreclose its senior interest in the Property, and upon completion of the foreclosure and in the absence of redemption, the interests of all Defendants in the Property shall be forever foreclosed, terminated, and extinguished (except for the Swickard Parties' interest in the Property, which has been assigned to Plaintiff (*see* ECF Nos. 118-1, 119)). *Diamond Benefits*, 66 Cal. App. 4th at 7; *LPP Mortg. Ltd., L.P.*, 2017 WL 663352, at *2; *Black Sky Capital, LLC*, 7 Cal. 5th at 161.

Plaintiff's Motion is therefore GRANTED as to Claim Four.

> D.      Replevin and Foreclosure of a Security Interest Against All Defendants (Claim Five)

Plaintiff seeks replevin and foreclosure of its security interest in the "Personal Property Collateral" as defined herein and set forth under the Security Agreement executed by Arif and Begum on July 28, 2009. (ECF No. 6 at 40–43; ECF No. 125 at 45–47, 51.)

As previously noted, a claim for foreclosure requires Plaintiff to establish "the subject loan is in default and the amount of default." *Arabia*, 208 Cal. App. 4th at 470. "[T]o sustain a judgment for replevin, 'it must be shown that possession was in the defendant at the time of the beginning of the action, or that he had the power to make delivery of the personal [property].'" *G&G Prods., LLC v. Rusic*, No. 2:15-CV-02796-RGK-E, 2019 WL 2996498, at *8 (C.D. Cal. Jun. 10, 2019), *appeal dismissed sub nom. G & G Prods. LLC v. Rusic*, No. 20-55291, 2020 WL 3250498 (9th Cir. Apr. 23, 2020) (citing *California Packing Corp. v. Stone*, 64 Cal. App. 488,

491–92 (1923) (affirming judgment on replevin action where defaulting mortgagors harvested and retained crops on mortgaged property)).

Having determined Arif and Begum are in default on the Note, the Court considers Plaintiff's claim with respect to the security interest. Plaintiff submitted evidence that Arif and Begum executed and delivered to it a Security Agreement on July 28, 2009, to further secure the Note. (ECF No. 124-3; ECF No. 125 at 45.) Pursuant to the terms of the Security Agreement, Plaintiff has a security interest in the following to secure all of Arif and Begum's obligations to Plaintiff under the Note (the "Personal Property Collateral"):

> (a) all interests, distribution rights, proceeds, and all other things of value owned directly or indirectly by the Debtor in any corporation, partnership, trust, limited partnership, limited liability company and/or limited liability limited partnership, including, without limitation, all of Debtor's ownership interest in and to NIM LLC, a Colorado limited liability company; (b) all instruments, including, without limitation, promissory notes and associated security therewith that may be owned by Debtor; (c) all general intangibles of Debtor, including, without limitation, goodwill, trademarks, trade names, option rights, permits, licenses, insurance policies and proceeds therefrom, rights of action, and books and records relating to the same; (d) all investment properly of Debtor; (e) all documents, including, without limitation, contracts, sales and purchase contracts, leases (both of real and personal property), subleases (of real and personal property) of Debtor; (f) all software of Debtor; (g) all commodity accounts or commodity contracts, securities (whether certificated or uncertificated), and bonds owned by Debtor; (h) all accounts, deposit accounts (including consumer deposit accounts), accounts receivable, escrow accounts, consignments, chattel paper (including both tangible, intangible and electronic chattel paper), payment intangibles, letter of credit rights, certificates of title, bonds, escrow accounts, commercial tort claims, judgments, litigation claims, bank accounts, and the like of Debtor; (i) all goods, materials, supplies, chattels, furniture, fixtures, equipment and inventory of Debtor; (j) all development rights, agricultural lien rights (including both possessary and nonpossessary agricultural lien rights), farm products, water taps and tap rights, water rights including, without limitation, those certain water rights granted in Decree No. 12999, entered August 9, 1976, in Book 26 of Judgments, Page 20, by the Superior Court for Lassen County concerning the Long Valley Creek Stream System within California in Counties of Lassen, Sierra and Plumas, water stock and permits, plans, drawings, specifications, permits, including, without limitation, that certain Use Permit (File No. 2002-113) issued by the Lassen County Planning Commission on February 26, 2003 for the operation of a Pozzolan mine, entitlements, studies, surveys, of Debtor; (k) all contracts and contract rights and all and all ownership interests, distribution rights, proceeds and all other things of value attributable therewith owned by Debtor; (l) all ownership interests, distribution rights, proceeds,

and all other things of value owned directly or indirectly by the Debtor, in any retirement accounts, including, without limitation, 40l(k) accounts, individual retirement accounts, Keogh accounts, SEP accounts, spend-thrift trusts, pensions, and all other varieties of trusts and/or retirement savings vehicles (to the extent permitted by law); (m) all trusts, estates, joint ventures and associations, and all other things of value attributable therewith owned by Debtor, or which Debtor, is a beneficiary thereof; (n) all boats, aircraft, antiques, firearms, musical instruments, fine art, life insurance policies (including, without limitation, cash value), automobiles, motorcycles, trucks, tractors; and (o) all accessions, increases, renewals, replacements, proceeds (including both cash and non-cash proceeds), products, related securities (whether certificated or uncertificated), general intangibles, supporting obligations, condemnation proceeds, and insurance claims and proceeds related to any and all of the above enumerated interests. ***The interpretation of the foregoing descriptions shall be broadly construed in favor of inclusion, and shall be interpreted in a manner that is most favorable to Secured Party (to extend [sic] permitted by law).***

(ECF No. 124-3 at 1–2; ECF No. 125 at 45–46) (emphasis in original). Further, pursuant to the Arif/Begum Agreement, Arif and Begum stipulate that Plaintiff has a first priority security interest in and a right to possess all of the Personal Property Collateral. (ECF No. 49 at 16–17; ECF No. 125 at 47.)

Based on this record, the Court finds Plaintiff has established its right to foreclose its security interest in the Personal Property Collateral and to possess the Personal Property Collateral and the proceeds therefrom and the products thereof. *Nissan Fire,* 210 F.3d at 1102; *Arabia,* 208 Cal. App. 4th at 470; *G&G Prods., LLC*, 2019 WL 2996498, at *8. Through the Arif/Begum Agreement and the terms of the Security Agreement, Plaintiff has also established Arif and Begum had the "power to make delivery of the personal [property]" at the commencement of this action. *G&G Prods., LLC*, 2019 WL 2996498, at *8. Further, Plaintiff has established its right is superior to any rights of the Defendants. *Nissan Fire,* 210 F.3d at 1102. No Defendant has opposed Plaintiff's claim. Moreover, Arif and Begum have stipulated in the Arif/Begum Agreement to Plaintiff's right to possess the Personal Property Collateral and foreclose on its interest in the Personal Property Collateral due to their default under the Note and Security Agreement. (ECF No. 49 at 16–17.)

Therefore, Plaintiff's Motion is GRANTED as to Claim Five.

///

E.	Application for the Appointment of Receiver Against All Defendants

(Claim Six)

Plaintiff seeks appointment of a receiver for the Property, based on the same evidence and arguments submitted in its October 29, 2020 motion to appoint receiver (ECF Nos. 120–122). (ECF No. 125 at 47–48, 51–52.) As previously discussed, the Court granted Plaintiff's motion to appoint a receiver by separate Order. (ECF No. 131.) Accordingly, Claim Six, which seeks identical relief on the same bases (*see* ECF No. 125 at 51–52), is DENIED as moot.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment (ECF No. 123) is GRANTED in part and DENIED in part as follows:

1. Plaintiff's Motion is GRANTED as to Claim One. Judgment is hereby entered in favor of Plaintiff against Arif in the amount of $4,807,615.58. However, pursuant to the Arif/Begum Agreement (ECF No. 49), the Judgment shall be on a non-recourse basis to support Plaintiff's liens on the Property and the Personal Property Collateral, and Plaintiff has waived a personal judgment against Arif and Begum for a deficiency due under the Note after the foreclosure sale of the Property;

2. Plaintiff's Motion is GRANTED as to Claim Two;

3. Plaintiff's Motion is GRANTED as to Claim Four. Plaintiff's interest in the Property by virtue of the Deed of Trust is hereby declared to be senior to the interest of all the Defendants. Any interests in the Property held by any of the Defendants, all of which are junior to the Plaintiff's interest, shall be foreclosed. In the absence of a pre-sale redemption, each Defendant is forever barred and foreclosed of any and all right, title, or interest in the Property. All persons claiming an interest in or to the Property subsequent to the recording of the Lis Pendens have no further interest in the Property by virtue of any deed or instrument recorded prior to the date of this Judgment;

4. Plaintiff's Motion is GRANTED as to Claim Five. As a result of Arif and Begum's default under the Note, and as confirmed in the Arif/Begum Agreement, Plaintiff is entitled to foreclose its security interest in the Personal Property Collateral; and

5. Plaintiff's Motion is DENIED as to Claim Six, which is moot in light of the Court's prior Order granting Plaintiff's motion to appoint Tom Morrow as Receiver for the Property (ECF No. 131).

FORECLOSURE DECREE

The foregoing findings of fact, conclusions of law, and Orders of the Court are hereby supplemented as set forth below. IT IS FURTHER ORDERED THAT:

1. This Foreclosure Decree is a final judgment as to claims made by Avalanche Funding, LLC, a Colorado limited liability company, against Defendants Syed M. Arif, an individual; Syeda Rehana Begum, an individual; Tim Swickard, an individual; Mapes Ranch, Inc., a California corporation; Five Dot Cattle Company, a California corporation; Norman F. Rice, deceased; the testate and intestate successors of Norman F. Rice, deceased, and all Persons Claiming by, through or under such Decedent, as represented by the personal representative of the Estate of Norman F. Rice; Gloria Rice, deceased; the testate and intestate successors of Gloria Rice, deceased, and all persons claiming by, through or under such Decedent, as represented by the personal representative of the Estate of Gloria Rice; the Rice 1997 Family Trust; Gloria M. Rice, Trustee of the Rice 1997 Family Trust; Norman Rice Enterprises, Inc., a Nevada corporation; Matthew G. Huntley a/k/a Matthew Grant Huntley, an individual; Michon Huntley, an individual; Ramona Stonebarger, deceased; the testate and intestate successors of Ramona Stonebarger, deceased, and all persons claiming by, through or under such Decedent, as represented by the personal representative of the Estate of Ramona Stonebarger; Art Koffinke, deceased; the testate and intestate successors of Art Koffinke, deceased, and all persons claiming by, through or under such Decedent, as represented by the personal representative of the Estate of Art Koffinke; Larry Campbell, deceased; the testate and intestate successors of Larry Campbell, deceased, and all persons claiming by, through or under such Decedent, as represented by the personal representative of the Estate of Larry Campbell; Hanson Cattle Company, purported corporation of likely Nevada domicile; Hansen Cattle Company, a Nevada corporation; North American Technical Trading Co., Inc., an Illinois corporation; a trustee of an unnamed trust to be established, referenced in a Notice recorded on February 11, 1997, in volume 660 at page 559;

Chicago Title Company in its capacity as Trustee under a Deed of Trust Recording Number 2008-04633 of Official Records, Lassen County; all persons unknown claiming only legal or equitable right, title interest or cloud on Plaintiff's interest in Property; and Does 1–50.

2. At the foreclosure sale of the Property:

> (a) Plaintiff or its successors and assigns shall be entitled to make a credit bid for some of all of the amount owing under the Note; and

> (b) In the event of a cash bid, all sale proceeds shall be first applied to the amount owing under the Note, and the surplus, if any, shall be paid into the registry of the Court in the same priority as the Defendants' foreclosed interests in the Property and pending further order of the Court.

3. At the foreclosure sale, the Property shall be sold in one parcel.

4. As soon as practicable and as directed by Plaintiff, the Receiver shall sell the Property at public auction in the manner prescribed by law.

5. The Receiver is appointed by the Court to execute this Final Judgment and Decree of Foreclosure. The Receiver shall sell the Property, as directed by Plaintiff and in accordance with 28 U.S.C. § 2001(a) for good funds, except that Plaintiff or its successors or assigns may bid by offering partial or full credit against this Judgment on the Note. A certified copy of this Final Judgment and Decree of Foreclosure issued by the Clerk of this Court shall constitute the authority of the Receiver for proceeding and acting in this matter. The Receiver or Plaintiff shall forthwith record a certified copy of this Final Judgment and Decree of Foreclosure in the official records of Lassen, California. After the foreclosure sale, the Receiver shall file a return or report of sale with this Court, and Plaintiff or the high bidder at the foreclosure sale shall seek this Court's confirmation of the Receiver's sale.

6. This Final Judgment and Decree of Foreclosure shall constitute a Writ of Special Execution and no additional levy need be made.

7. The Receiver shall have full power to adjourn, continue, or postpone the sale of the Property without re-advertising, as the Receiver may deem best, and as authorized by law or as may be requested by Plaintiff.

8. The Receiver shall give all appropriate notices as required by law. The Court directs

that publication of the sale shall be made in a newspaper of general circulation in Lassen County pursuant to California Government Code § 6063, which requires three publications once a week or more often, with at least five days intervening between respective publication dates and not counting such publication dates, and the first publication shall occur at least 20 days prior to the time of sale.

9. Notice of Sale shall be served upon Arif and Begum by U.S. Mail and shall be posted in a public place in Lassen County not less than 20 days prior to the date of sale.

10. The Property shall be sold at the foreclosure sale "AS IS AND WHERE IS" without any representations or warranties whatsoever by Plaintiff with respect to condition of title or condition of improvements, water, permits, or any other matter.

11. The Receiver's sale shall occur outside and on the courthouse steps of the front door of the Lassen County Courthouse located at 2610 Riverside Drive, Susanville, CA 96130.

12. Nothing herein requires Plaintiff to bid at the foreclosure sale, or to bid a minimum amount at the foreclosure sale.

13. Any pre-sale redemptions shall be exercised in accordance with California State law.

14. Having found that Plaintiff has waived a deficiency judgment on the Note, Arif and Begum have waived their redemption rights and, to the extent not waived, have assigned their redemption rights to Plaintiff pursuant to the Arif/Begum Agreement and Plaintiff has waived any redemption rights it might have received. No Defendant shall have statutory or other right to redeem the Property after the sale.

15. After the Receiver's Sale, the Receiver shall execute and deliver a Receiver's Deed conveying the Property to the highest bidder at the Receiver's sale, free and clear of all claims and liens of the parties in this case and of other persons who obtained an interest in the Property after the recordation of the Lis Pendens. Upon issuance of the Receiver's Deed, the Receiver shall promptly report to this Court the issuance of the Receiver's Deed.

16. After the completion of the foreclosure and issuance of the Deed, the United States Marshal is authorized to evict from the Property any person who remains on the Property in violation of the rights of the grantee under the Receiver's Deed.

17. Pursuant to the settlement between Plaintiff and the Swickard Parties, and notwithstanding anything to the contrary in this Foreclosure Decree, the Swickard Parties' interest in the Property has been assigned to Plaintiff and is not foreclosed by this Foreclosure Decree.

18. The Court issued a separate Order further describing the Receiver's duties with respect to the Property (ECF No. 131), and that Order is incorporated by reference herein.

19. The Court expressly finds and determines that there is no just reason for delay, and this Final Judgment is a Final Order and Final Judgment of the Court. Fed. R. Civ. P. 54(b). Plaintiff may immediately proceed with the foreclosure of the Property, provided that the Notice of Sale shall not issue until 30 days after the entry of this Judgment pursuant to Federal Rule of Civil Procedure 62(a).

The Clerk of the Court shall enter this Final Judgment and Decree of Foreclosure for Plaintiff against all the Defendants.

IT IS SO ORDERED.

DATED: April 30, 2021

_____
Troy L. Nunley
United States District Judge